The Chancellor.
In May, 1817, Adam Kinnaman sold to James Johnson two tracts of land in the township of Mansfield, then a part of Sussex county, for $2900 ; received $1000 of the consideration money, and took his bonds and a mortgage on the same land for $1900, the balance of the consideration money ; Johnson, in December, 1817, sold a part of each tract to one Fitzer, which Kinnaman released from the mortgage. The mortgage to Kinnaman was recorded on the day of its date. At the term of August, 1821, of the Common Pleas of Sussex, Lewis Johnson recovered a judgment against James Johnson, for about $584; and at the same term of the said court, William Weller obtained a judgment against James Johnson and the defendant Richard Henry, for about $1140. Executions were issued on these Judgments. The execution against James Johnson alone was levied on a farm in the township of Mansfield, “said to contain 160 acres,” (which included the lands bought by James Johnson of the complainant,) and also on a lot in the township of Greenwich, “said to contain 10 acres,” “all subject to prior incumbrances.” The execution against James Johnson and Richard Henry was levied on a farm in Mansfield, (1 take it to be the same farm which was levied on by virtue of the execution against Johnson alone,) and on a house and lot in the village of Asbury in the possession of Richard Henry, and also “on a lot of land in the same township, said to contain 30 acres; likewise on one other lot in the township of Mansfield said to contain 20 acres, bounded by lands of Thomas Schureman and others, all subject to prior incumbrances.” On the 8th October, 1822, pending a suit in this court brought by Kinnaman for the for eel cure of the mortgage so given by James Johnson to him, Johnson and wife re-conveyed to Kinnaman, in payment of the mortgage debt, the two tracts so bought of Kinnaman and mortgaged to him, (except the parts thereof which had been sold and conveyed by Johnson to Fitzer and released by Kinnaman,) *92 .and Kinnaman thereupon gave up to Johnson the bonds and mortgage, and took possession of the lands so re-conveyed, and has been in possession ever since. The deed of re-conveyance was recorded April 10, 1828. The mortgage to Kinnaman remained uncancelled of record. Afterwards, the sheriff sold the property levied on by virtue of the said executions, including the lots so mortgaged and re-conveyed to Kinnaman, and made a deed therefor to the defendant John Henry. Henry, when he bought at the sheriff’s sale, knew that Kinnaman had sold these lands to Johnson, and that Johnson gave Kinnaman a mortgage thereon for the residue unpaid of the consideration money, and that Johnson had re-conveyed the lands to Kinnaman in discharge of the mortgage debt, and that Kinnaman thereupon took ■possession, and was in possession at the time of the sheriff’s sale. The'question is, whether the purchaser at the sheriff’s sale acquired a title to these lots free and unincumbered. If, on the facts as thus stated, he did not, the decree in the case must be for the complainant; and it will be unnecessary to go into a more particular detail of the evidence in the cause.
At the time of the levy of the executions, the mortgage was recorded, and was the prior lien. Of this fact the purchaser at the sheriff’s sale was chargeable with notice. The levy was subject to the mortgage ; Johnson’s equity of redemption only was levied on. Before the sale by the sheriff, Johnson had re-conveyveyed the lands to the mortgagee in discharge of the mortgage debt. At the time of the sheriff’s sale, Johnson, the defendant in the execution, had no interest whatever in the lands. What interest in the land, then, could be sold on the execution against Johnson levied on his interest while he had an equity of redemption in it. Could a greater interest than Johnson ever, at any time, had in the lands, be sold on anfexecution against Johnson. Certainly Johnson’s re-conveyance to Kinnaman gave Johnson no greater interest in the land than he had before. That act deprived him of all interest in the land, instead of adding to or increasing his interest that had been levied on.
It was said,|in argument, that the levy was on the land subject to the mortgage, and that if, at the time of the sheriff’s sale, the mortgage was paid, the purchaser at that sale bought the land, *93 and, there being then no mortgage on it, he got it unincumbered. This would be so if he paid off the mortgage and held the land, or if he had paid off the mortgage and conveyed the land to a third person; but it is not so when he conveys the equity of redemption to the mortgagee, and gives up possession to the mortgagee, in discharge of the mortgage debt. The interest he thus conveys is simply his equity of redemption, the interest that had been levied upon. To say that if, after a levy on a mortgagor’s equity of redemption, he conveys it to the mortgagee in discharge of the mortgage, the whole estate in the land, as well the interest of the mortgagee as that which the mortgagor had at the time of the levy, may be sold under such levy, is a proposition which cannot be maintained.
The equity of the complainant’s case does not rest on the idea that Johnson got the bonds and mortgage by promising to pay the judgments, or by misrepresentations that he had paid them, or on the idea that the understanding was that he had paid off the judgments. The complainant cannot be subjected to the loss of his estate in the lands because on receiving a conveyance of Johnson’s equity of redemption and the possession, in discharge of his prior lien, he did not insist that the subsequent liens should be first paid off.
The complainant must be considered in the light of a mortgagee in possession, and the purchaser at the sheriff’s sale as having no other interest in the lands than the right to redeem them, on payment of the amount of the mortgage debt, and interest, less the value of the rents and profits since the complainant has had possession.
I have a remark to make in reference to the answer filed in this cause.
In several respects it is open to animadversion. I have had occasion to remark, before, that it is of the utmost importance that defendants be held to the established rules for answering. One of these rules is, that it is not sufficient for a defendant to say he has no knowledge of a fact charged in the bill. He must answer as to his knowledge and information- This rule has not been observed in the answer in this case.